**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**March 10, 2014**

# In the Court of Appeals of Georgia

A13A2079. JORDAN v. THE STATE.                                   DO-078 C

DOYLE, Presiding Judge.

Following a jury trial, Jessie Lee Jordan was found guilty of possession of cocaine,[1] driving with a suspended license,[2] and driving without insurance.[3] He now appeals the denial of his motion for new trial (1) challenging the sufficiency of the evidence and (2) arguing that the trial court abused its discretion by failing to grant a mistrial based on certain evidence relating to drug use. Finding no error, we affirm.

---

[1] OCGA § 16-13-30 (a).

[2] OCGA § 40-5-121 (a).

[3] OCGA § 40-6-10 (b). Jordan was also found guilty of driving under the influence of alcohol to the extent it was less safe to drive, but after trial, the trial court found the conviction on that count unsupported by the evidence.

Construed in favor of the verdict,[4] the record shows that at 1:30 a.m., in November 2006, an officer observed Jordan in a vehicle parked on the wrong side of the road, facing oncoming traffic. The officer ran a computer check on the licence tag and determined that the vehicle lacked valid insurance and registration. By the time the officer turned around to stop the vehicle, it had moved to the driveway of a hair salon. After a short time, the car moved to another location and drove in a manner to avoid police, and the officer ultimately executed a traffic stop of the vehicle.

During the stop, Jordan explained that he did not have a license, so the officer asked him to get out of the car. At that time, the officer observed in plain view a bottle with a fruit punch label in the driver's side floorboard, but the contents did not look like fruit punch. The officer requested and received consent to retrieve and examine the bottle, which looked and smelled like whiskey. A computer check of Jordan's name and date of birth reported that his license had been suspended.

A second officer, Deputy Jason Howell, arrived and observed Jordan chewing on a foreign substance that looked to the officer like crack cocaine. Howell asked him to spit it out, Jordan refused, and a physical struggle ensued. Jordan ultimately spit out some pieces of the suspected crack cocaine, and after Jordan was restrained in

[4] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

handcuffs, the officers were able to locate and retrieve some of the pieces Jordan had spit out. The pieces field-tested positive for cocaine, which result was later confirmed in lab testing.

An officer then read Jordan the implied consent warning, and Jordan refused a blood test. The officers then decided to take Jordan to a hospital in case he had ingested any of the cocaine he had in his mouth. Medical staff treated Jordan for a cocaine overdose.

Based on these events, Jordan was charged with possession of cocaine, obstruction of an officer, driving under the influence of alcohol, driving with a suspended license, and driving without insurance. The jury found Jordan not guilty of obstruction, and after the trial, the court found the evidence insufficient as to the DUI count. Jordan now appeals his conviction on the remaining counts.

1. Jordan argues that the evidence was insufficient to support a guilty verdict as to the count for possession of cocaine. Specifically, Jordan asserts that the evidence was fatally undermined by certain vagaries in the officers' accounts of Jordan's behavior and where the spit-out cocaine was found. Nevertheless, when an appellate court reviews the sufficiency of the evidence,

3

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[5]

Here, there was testimony from both of the arresting officers that they personally witnessed Jordan with what looked like crack cocaine rocks in his mouth. There was further testimony from the officers that they saw Jordan spit out some pieces of the suspected cocaine, which the officers retrieved and which later tested

---

[5] (Emphasis in original; citation omitted.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

positive for cocaine. This evidence was sufficient to show that Jordan possessed the cocaine;[6] any inconsistencies were for the jury to resolve.[7]

2. Jordan also contends that the trial court erred by denying his motion for a mistrial following testimony elicited by the State that he argues violated the trial court's pre-trial ruling excluding the results of a blood test based on hearsay and confrontation grounds. We discern no error.

During trial, outside the presence of the jury, the State proffered testimony by a nurse who treated Jordan to explain the treatment and other events at the hospital. Jordan's counsel objected on hearsay grounds to the admission of testimony or documents containing the results of the hospital's diagnostic drug screening because the nurse herself did not perform the blood tests. The trial court excluded the documented test results and ruled that the State could not elicit testimony stating the results of the drug screen: "I think all you can say is '[D]id you do some testing that

---

[6] See OCGA § 24-4-8 (2008) ("The testimony of a single witness is generally sufficient to establish a fact.") This Code provision has been retained but renumbered as OCGA § 24-14-8 in Georgia's new Evidence Code, applicable to trials commencing on or after January 1, 2013. Ga. L. 2011, p. 99, §§ 2, 101. Jordan's trial occurred in 2008. See also *Gantt v. State*, 229 Ga. App. 207, 209 (2) (493 SE2d 608) (1997).

[7] See *Jackson*, 443 U.S. at 319 (III) (B).

caused you to take some action,' and you, now ask those kinds of things. I don't think [the witness] can say she got a positive drug screen. . . [S]he can't say what [the test result] is [be]cause she did not perform the test."

When the witness was called to testify, the following colloquy ensued:

Prosecutor: What was [Jordan's] physical condition? What did you observe about his appearance?

Witness: . . .[H]e was in distress . . . his vital signs were crazy. His heart rate was sky high. His blood pressure was sky high. He was in obvious distress. . . he was in pretty bad distress at that time.

Prosecutor: Based on the lab results that were done[,] did you perform any actions with regard to the defendant?

Witness: Yes, ma'am. He received activated charcoal by a tube in his nose, which activated charcoal is given for drug overdoses to absorb the drugs that can still be in your stomach, in your system –

Jordan's Counsel: Judge, I'm going to have to object. . . .

On appeal, Jordan contends that the State circumvented the trial court's ruling by eliciting evidence concerning the results of the drug screening. But this ignores the legal basis for the trial court's ruling. The results of the drug screening were deemed

6

inadmissible on hearsay and confrontation grounds because the witness had not performed the drug screening analysis.[8] In contrast, the nurse's testimony about her personal observations and the actions she took do not pose the same problem. Jordan was able to cross-examine the nurse about these aspects of her testimony, and her testimony did not admit any out of court statement consisting of hearsay.[9]

Further, to the extent the evidence implied that Jordan had used drugs and reflected poorly on his character, the testimony was relevant to Jordan's possible ingestion of the drugs he was accused of possessing. "The fact that [relevant] testimony incidentally placed appellant's character in issue by showing that he used illegal drugs does not otherwise [require] the testimony to be excluded."[10] Accordingly, the trial court did not abuse its discretion by denying Jordan's motion for a mistrial.

---

[8] See, e.g., *Bullcoming v. New Mexico*, __ U.S. __ (II) (B) (131 SCt 2705, 180 LE2d 610) (2011) (rejecting the practice of "surrogate testimony" and holding that the admission of test results by a witness who did not perform the analysis would be a violation of the Confrontation Clause).

[9] See OCGA § 24-3-1 (2008) ("Hearsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons."). This Code section has been repealed and replaced by OCGA § 24-8-801.

[10] *Dyers v. State*, 277 Ga. 859, 860-861 (2) (596 SE2d 595) (2004).

*Judgment affirmed. McFadden and Boggs, JJ., concur.*